The opinion of the Court was delivered by
Fenner, J.
This is a mandamus proceeding by the Relator, as bolder of bonds of the City of New Orleans, issued under Act No. 49 of 1869, to compel the City administrators to comply with the provisions of Section 5 of said Act, by providing for the payment of the interest coupons falling due in 1882, and in subsequent years. The bonds, proceeded on, are of the same class with those involved in the case of State *479 ex rel. Samory vs. City of New Orleans, No. 8233 of our docket, recently decided! and we may refer to tlie opinion in that case for a statement of the legislation and other facts affecting the general rights of such bondholder.
Considering, in the Samory case -.
L That the judgment appealed from only ordered the Respondents u to provide and set apart from the revenues of 1881, the sum of $6,125 to meet and pay the semi-annual interest to fall due on the bonds held by Relator.”
2. That said judgment was only rendered and signed on the 21st of January, 1881, after the filial adoption of the budget settling the rate of taxation for the year 1831, and fixing and appropriating the revenues of said 5'ear.
3. That said judgment did not, by its terms, contemplate or command the raising of additional revenues for 1881, by taxation or otherwise.
4. That appeal had been taken by the Respondents alone, and that no amendment of the judgment liad been asked by the Relator, who was appellee.
5. That in absence of sucli prayer for amendment, our appellate functions were confined to affirming or reversing said judgment, or amending it in favor of appellant.
6. That said judgment, if affirmed as rendered, could only have been executed, even at the date of Us rendition, by taking the amount of Relator’s claim from the revenues already fixed and appropriated to other purposes, and could not have been executed by the levying of new taxes, because the mandamus did not so order, and for other reasons stated in the opinion.
7. That for reasons fully set forth in the opinion, the revenues of 1881 could not be diverted from the purposes to which they were devoted by the budget.
We held, in that case, that the judgment rendered could not be lawfully executed, was therefore erroneous, and should be reversed.
The present case is distinguished from the one just mentioned in several important features, viz:
1. The judgment appealed from commands the Respondents “ to include in the estimates of receipts and expenditures to be adopted by them for 1832, and in the estimates to be by them thereafter annually adopted, pursuant to the provisions of Act No. 49 of 3869, appropriations sufficient to meet and pay the interest upon the bonds held by Relator, say the annual sum of $9,394, and that the amount so appropriated be set apart and deposited, etc.
*480 2. This •judgment was rendered in March, 1831, several mouths before the period fixed by law for the adoption of the budget or estimate of receipts and expenditures for 1882.
3. The Relator and appellee has filed timely answer to the appeal, praying an amendment so as to command the defendants to levy and collect a sufficient tax to satisfy Relator’s demands.
These distinctions remove the obstacles which the Relator in the former case encountered, and require a determination of the present case upon otherprinciples.
The constitutionality of Act 4!) of 1869, is not questioned.
The genuineness and validity of the bonds held by Relator are not disputed.
That the Act constituted a contract between the City and the holders of bonds issued thereunder, cannot be controverted.
It is settled in the jurisprudence of this State and of the Supreme Court of the United States, that any law of the State, whether in the form of a legislative Act, or a constitutional provision, which impairs the obligation of a contract, is repugnant to the Constitution of the United States, and is to be bold inoperative so far as it impairs such obligations. We have heretofore expressly held that the Act No. 31 of 1876, and Art. 209 of the present Constitution, cannot operate to impair the obligations of antecedent contracts.
By tlie terms of Section 5 of Act 49 of 1869, it is made tlie positive duty of tlie common council of tlie City of New Orleans to appropriate annually, out of its revenues, “a sum sufficient to pay the annual interest on tlie bonds authorized to be issued,” and to deposit the same in the manner indicated, and to “ apply the same exclusively to the semi-annual payment of the interest coupons of said bonds.”
This duty is positive, unambiguous, and so clearly defined as to exclude the necessity of the exercise of any discretion, and to make it substantially ministerial in its character, as much so as any corporate duty can be. All corporate duties must be performed through the agency of its officers, who act by means of corporate resolutions or ordinances, which, though quasi-legislative in their character, have been universally held to fall, in proper cases, within the control of the writ of mandamus. Our Code of Practice expressly provides that tlie writ may be “ addressed * * * to a corporation * * * directing if to perform certain acts belonging to tlie place, duty or quality with which it is clothed,” (Art. 820), and also “that it may he directed to public officers to compel them to fulfil any of tlie duties attached to 'their office, or which may be legally required of them.”
It is not denied that, at the date of the Act of 1869, these provisions *481 furnished a complete and appropriate remedy to compel the City and its common council to perform the duties so imperatively imposed on them by the Act.
The City contends, however, that this remedy, so far as it, and its officers are concerned, lias been taken away by subsequent legislation, to-wit: by Act No. 5 of 1870.
The performance of the duties referred to, is certainly a vital obligation of Relator’s contract. .
The only remedy afforded by the law to enforce;the performance of this obligation was the writ of mandamus; and if that remedy hasbeen taken away, it is evident that there exists to-day, in the remedial system of our law, no remedy whatever for the enforcement of this specific obligation of the contract.
The Supreme Court of the United States, very recently, in discussing this very same Act of 1870, and Section 7 of the Premium Bond Act, settled the question conclusively and adversely to the City’s claim, holding:
“ A contract is impaired, in the sense of the Constitution, when the means by which, at the time of its execution, it could be enforced, that is, by which the parties could be obliged to perform it, are rendered less efficacious by legislation operating directly upon those means.” Wolff vs. New Orleans, 13 Otto, 367.
However questionably broad this statement may be, the correctness of the principle cannot be disputed when applied to legislation destroying the only remedy for the enforcement of a particular contract obligation, and supplying none in lieu thereof. Unless, therefore, there be other reasons for denying the remedy of mandamus than the subsequent legislation referred to, that, cannot avail.
We think it very plain that the terms, in which the duty referred to is imposed, involve necessarily the duty to levy such tax (at least within the power of taxation possessed, at the time, by the corporation) as v'hi render possible the performance of the duty. It would be absurd to require the council to appropriate a specific sum out of the revenues, and to deposit that sum with a particular officer, and to apply the same exclusively to the payment of this interest, unless the legislature contemplated, at the same time, that revenues should be raised in each year sufficient to meet and fill the said requirements ; and, if such revenues cannot be raised otherwise than by taxation, as the answer of the City in this case admits, they must be so provided.
The use of the -word, “ appropriate,” taken in connection with the charter of the City, then in force, places this question in a clearer light. Section 124 of the Charter of 1856, provides substantially that the City *482 council shall, once in every twelve months, before fixing the amount of taxes to be assessed, make detailed estimates of liabilities and expenditures, and shall then fix such fate of taxation as, together with other revenues, may be necessary to meet said estimated liabilities and expenditures; and “ the adoption of said estipiaie shall be considered as the appropriation of the amount therein stated for the purposes therein stated.”
This is the only mode of appropriation contemplated by the charter, and is the mode which the legislature had in view when it used the word “ appropriate ” in the Act of 1869, It follows that the duty t4 appropriate included the duty to provide for it by taxation, unless it could be met out of other revenues, which the City itself says cannot be done, but which it is still at liberty to do, if it sees proper. As to the extent of the City’s power of taxation, under this contract, considered in connection with other legislation in'foree at the time, the broad dicta of the Supreme Court of the United States, in United States ex rel. Ranger vs. New Orleans, if literally applied,'would remove all doubt. It is there said:
“When a power to contract a debt is conferred, it must be inferred that a corresponding power of providing for its payment (by taxation) is also conferred. The latter is implied in the grant of the power, and such implication cannot be overcome, except by express words excluding it.”
This dictum was uttered in a case where at the time the law was passed authorizing the contract, there was no legislative restriction on the power of taxation; and, as applied to such a case, could not be objected to. We think the more cautious and qualified expression of the same Court, in the case of Loan vs. Topeka, 20 Wall. 660, furnishes a sounder rule. It was there said:
“It is to be inferred that when the legislature authorizes a city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is, in the Act itself, or- in some general Statute, a limitation upon the power of taxation which repels such an inference.”
The question, whether the existence of such limitation in a general Statute “ repels the inference ” of an intention to extend such power in the particular Statute authorizing the creation of a debt by bond, is one which must be determined on the circumstances of each case, and much is here weightily said by the City to show that, in the instant case, the inference contended for is repelled.
We find it, however, unnecessary to determine that question now. At the time of the adoption of the Act of 1869, the City possessed the power of taxation to the extent of one and one-half per cent, and all *483 the authorities agree that this power was read into the contract and could not he revoked to the prejudice of holders of bonds issued under the Act, who had an irrevocable right to its exercise to the extent necessary for the fulfilment of their contract. As the legislature could not revoke this power, neither could it destroy the rights of these bondholders therein and thereupon, by providing that the whole of said tax above the alimony of the City, should be devoted to other purposes, to their complete exclusion from the benefits thereof. This was attempted to be done in the Premium Bond Act; but while we held that, under that Act, the premium bondholders were entitled to a specific tax provided for their benefit, we also held that the seventh Section and all other parts of said law. which militated against the contract rights of other bonded creditors were unconstitutional and inoperative. State ex rel. Moore vs. New Orleans, 32 A. 742.
It thus follows, that, although the City may levy 10 mills for its alimony, and 5 mills for the premium bonds, the latter is not to the prejudice of the right of Relator to have a tax levied, within five mills, to the extent necessary to satisfy his contract.
The objection of the City that mandamus cannot issue to compel the levy of a tax or provision of funds, without judgment previously obtained, is without foundation under our system.
The writ of mandamus is not provided, under our law, as a means of enforcing judgments. It is given as a remedy to compel the performance of duties. Relator’s right to demand the performance of duty here claimed, flows from the law and from the fact that he is holder of the bonds, whose genuineness and validity are not disputed, a fact admitted by the City, and which could derive no additional certification from a judgment. The existence and nature of the duty equally depend upou the law, and, instead of being required to be established by prior judgment, they form the very question at issue in a mandamus proceeding, and are determined by the judgment therein.
The duty to raise the sum of $9,394, by taxation upon a given assessment of property, is quite as simple and free from discretion, as would be the duty to levy a specific tax of one mill on the same assessment. It requires merely the simplest arithmetical operation to fix the rate of tax required as clearly as if it had been fixed in the law. Distinction cannot be made between the two cases; and it is admitted that mandamus lies to enforce the levy of a specific tax.
It only remains to consider the objection of prematurity of the demand.
We think the admitted fact that the City had failed and refused to perform this duty for six years, notwithstanding timely demand, and the City’s own return to the effect that it was not obliged, and did not *484 intend, to perform it, conclusively overthrow this objection aud establish such a case of intended and certain default as justified the issuance, of the writ in advance of the time when the duty should, in the then current year, bo performed.
So far, however, as the mandamus orders the performance in subsequent years, we shall not affirm it.
The City’s default, heretofore, has been based upon her construction of her legal obligations, and it is not to bo presumed that she will repeat it after these have been judicially determined.
It might be, moreover, that the agents of the City, through whom alone she can act, may discover other objections or defenses to such demand in future years, which have not been passed upon and are not concluded by this decision.
In amending the judgment so as to direct Respondents to levy taxes to the extent necessary for the performance of the duty, we do so simply to place beyond question their authority to do so if necessary, and without prejudice to their right to satisfy Relator’s demand, in any lawful way they may select, out of the revenues.
Our judgment will be the judgment which should have been rendered by the court a qua, and will have effect as if rendered at that time, and we leave that court to regulate and enforce its execution.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled and reversed, in so far as the mandamus ordered applies to years subsequent to 1882; that it bo amended so as to authorize and direct Respondents to levy and collect such tax as may be necessary to satisfy Relator’s demand; and that, in other respects, it be affirmod, Relator to pay costs of this appeal.
Bermudez, C. J., and Poché, J., dissent.